UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PETER RICCI and BARBARA RICCI,

                     Plaintiffs,        13-cv-07729 (NSR)
   -against-                                 OPINION & ORDER

TEAMSTERS UNION LOCAL 456,
GODADDY.COM, and THE NEW YORK TIMES
COMPANY

                     Defendants.
------------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

     Plaintiffs Peter Ricci and Barbara Ricci ("Plaintiffs") commenced this action in state court on July 8, 2013 against GoDaddy.com, LLC ("Go Daddy") and Teamsters Union Local 456 (the "Union") (together, "Defendants").[1] The case was removed to federal court on October 31, 2013 by the Union. Defendant Go Daddy and Defendant Local 456 move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the following reasons, Go Daddy's motion is GRANTED and Local 456's motion is GRANTED.

**I.   Background**

     The following facts are derived from Plaintiffs' Complaint, and are accepted as true for purposes of this motion. Plaintiff Peter Ricci was a member of the Union from September 7, 1983 through December 6, 2012. Plaintiffs allege that Plaintiff Peter Ricci was "blackballed" and retaliated against by the Teamsters Union due to a refusal to speak at a Teamsters' meeting in

---

[1] On December 13, 2013, the Court severed and remanded any and all claims against Defendant The New York Times. Docket No. 27. Accordingly, The New York Times is no longer a defendant in this action.

1

September 2002 in favor of the then-Union President, Eddie Doyle. Plaintiffs claim that following this meeting, Mr. Ricci was fired from several jobs, not placed in certain jobs that were given to less senior union members, and otherwise "blackballed" by the union. Plaintiffs also allege that on August 22, 2012, August 23, 2013, and September 10, 2013 certain individuals associated with the Union distributed newsletters that contained defamatory statements about Plaintiffs and their daughter, and that the newsletters were then posted on two websites. Go Daddy did not write the newsletters, nor did it post the newsletters on the two websites. Go Daddy is an internet web hosting provider and provided web hosting service to the two websites on which the newsletters were posted.

## II.  Motion to Dismiss Legal Standard

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). This "plausibility standard" is guided by two working principles. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all of a complaint's allegations as true, this tenet does not apply to legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, mere recitals of the elements of a cause of action, supported only by conclusory statements, are not sufficient. *Id*. at 555; *Harris,* 572 F.3d at 72. Second, in order to survive a motion to dismiss, a complaint must state a "plausible claim for relief." *Twombly*, 550 U.S. at 556; *Harris,* 572 F.3d at 72. Determining whether a complaint states a

2

plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris,* 572 F.3d at 72.

*Pro se* plaintiffs enjoy a more liberal pleading standard. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court should read pro se complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)). A *pro se* plaintiff's pleadings must still "contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

### III. Go Daddy's Motion to Dismiss

#### a. Immunity Under the Communications Decency Act

The Communications Decency Act ("CDA"), 47 U.S.C. § 230, states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An interactive computer service "means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including . . . a service or system that provides access to the Internet . . . . " *Id*. at § 230(f)(2). The CDA also states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id*. at § 230(e)(3).

The CDA was enacted by Congress in 1998 to overrule the New York state court decision in *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, where an interactive computer service was found liable for the defamatory comments of one of its two million users. *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 472 (E.D.N.Y. 2011). Since the purpose of the CDA is to "preserve the vibrant and competitive free market that presently exists for the Internet," 47 U.S.C. § 230(b)(2), Congress intended for all interactive computer services that are treated as publishers or speakers of content written by third parties to be immune from liability for those third party comments. *Ascentive*, 842 F. Supp. 2d at 472.

The CDA "precludes courts from entertaining claims that would place a computer service provider in a publisher's role," and therefore prohibits lawsuits that would hold such a service "liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content." *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (quoting *Zeran v. America Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997)). "Deciding whether or not to remove content or deciding when to remove content falls squarely within [an interactive computer service's] exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity." *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007).

Therefore, any "information service, system, or access software provider" that is the passive host of third party content on its server or websites is an interactive computer service that is entitled to immunity for the content of that third party. *Doe v. City of New York*, 583 F. Supp. 2d 444, 449 (S.D.N.Y. 2008). In order to achieve Congress' goal, courts have agreed that immunity under the CDA should be construed broadly. *Gibson v. Craigslist, Inc.*, 08 CIV. 7735 (RMB), 2009 WL 1704355, at *3 (S.D.N.Y. Jun. 15, 2009).

### b. Go Daddy is Immune Under CDA

Plaintiffs contend that they have a valid claim against Go Daddy because Go Daddy failed to investigate or remove "slandering newsletters" written about the Plaintiffs and their family. In support of its motion to dismiss, Go Daddy asserts that it is an interactive computer service host provider and is thus afforded protection under the CDA. To survive Go Daddy's motion to dismiss, Plaintiffs need to prove that under the CDA, Go Daddy is not an interactive computer service, or, even if it is, it is not being held liable as a publisher or speaker of a third party content provider.

There is no question that Go Daddy qualifies as an interactive computer service. *Kruska v. Perverted Justice Found. Inc.*, CV08-0054-PHX-SMM, 2008 WL 2705377 (D. Ariz. July 9, 2008) ("GoDaddy, as a web host, qualifies as an interactive computer service provider under the CDA."). Go Daddy is the "world's largest domain name registrar, maintaining over 50 million domain names registered by customers around the world," *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 548 (9th Cir. 2013), and it is also a very well-known web hosting company. *Kruska*, 2008 WL 2705377. As a domain registrar and web hosting company, Go Daddy "provides . . . computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). A number of circuit and district courts have held that similar companies qualify as interactive computer services as well. *See Parker v. Google, Inc.*, 242 F. App'x 833, 838 (3d Cir. 2007) (Google qualified as an interactive computer service and was not liable for the harmful comments posted about plaintiff on websites that can be found via a Google search); *see also Green v. Am. Online (AOL)*, 318 F.3d 465, 469 (3d Cir. 2003) (holding that America Online (AOL) is an interactive computer service because it provides online communication tools that enable users to interact with one another, but has no control over the content of the information

users send); *Gibson*, 2009 WL 1704355 (holding that Craigslist qualifies as an interactive computer service because it is merely a host site for third parties' advertisements).

There is also no question that the newsletters that Plaintiffs wanted removed derived not from Go Daddy, but from a third party. Nor have Plaintiffs asserted that Go Daddy has adopted the alleged statements as its own. Therefore, the only remaining question is whether Go Daddy can be held liable "as the publisher or speaker" of that content upon Go Daddy's failure to remove the newsletters.

The two websites on which the newsletters appeared on are hosted by Go Daddy, but Go Daddy has no active control of the content that is published on those websites. If Go Daddy were to remove the newsletters, it would be exercising a "publisher's traditional editorial" role in withdrawing or altering the content. Since an interactive computer service cannot be treated as the publisher of third party content, even under the liberal standard of review for *pro se* pleadings, Plaintiffs' claim fails to establish that Go Daddy is liable for merely failing to remove the newsletters posted by individuals other than Go Daddy. Accordingly, the Court grants Go Daddy's motion to dismiss.

### IV. The Union's Motion to Dismiss

The Court has liberally read the *pro se* Plaintiffs' Complaint, which does not assert any specific claims or reference any specific statutory or common law basis for relief, and finds that Plaintiffs attempt to state a claim for retaliation and breach of the duty of fair representation under the National Labor Relations Act ("NLRA") against the Union.

#### a. Retaliation

Under Section 7 of the National Labor Relations Act ("NLRA"), a union member has a right to refrain from "assisting" the union of which he or she is a member. 29 U.S.C. § 157.

Section 8 prohibits a labor organization from "restrain[ing] or coerc[ing] employees in the exercise of the rights guaranteed in section 157." 29 U.S.C. § 158(b)(A).[2] Plaintiffs allege that following Mr. Ricci's refusal to speak on behalf of the Union President, which can be construed as protected conduct under Section 7, the Union took retaliatory action. Such conduct, as it was allegedly in reaction to protected conduct, falls within the gamut of unfair labor practices in Section 8. In addition, "a union may be found to have engaged in an unfair labor practice by breaching its statutory duty of fair representation within the requirements of section 8(b)(1)(A) of the NLRA." *NLRB v. Local 282, Int'l Bd. Of Teamsters*, 740 F.2d 141, 145 (2d Cir. 1984)).

The six-month statute of limitations contained in Section 10(b) of the NLRA applies to claims that a union violated the unfair labor practice provision of Section 8. Specifically, Section 10(b) states, "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge . . . ." 29 U.S.C. § 160(b). The protected action that Plaintiffs allege spurred the Union's retaliation occurred in 2002. Plaintiffs allege that Mr. Ricci continued to be retaliated against by the Union through the date that he withdrew from the Union, or December 6, 2012. Even taking the latest possible date upon which Union action could have occurred, Plaintiffs were required to file their claim by June 6, 2013. Plaintiffs filed their Complaint on July 8, 2013. Therefore, the statute of limitations bars Plaintiffs' claim.

### b. Breach of Duty of Fair Representation

A "duty of fair representation . . . is implied under the scheme of the NLRA." *Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) (citing

---

[2] As the Court noted in its December 13, 2013 Order, Federal courts lack subject matter jurisdiction over actions arising out of section 7 or section 8 of the NLRA unless the section 7 or section 8 claim is collateral to a claim over which the court independently has jurisdiction. *See Moore v. Roadway Express*, No. 07-CV-977 (DLI)(JMA), 2008 WL 819049, at *7 (E.D.N.Y. Mar. 25, 2008). As federal courts have jurisdiction over claims of the breach of the duty of fair representation, *see id.*, the Court has collateral jurisdiction over the section 7 and section 8 claims.

*DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983)). This implied duty requires a union "to represent fairly all employees subject to the collective bargaining agreement," *Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citing *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 74 (1991)), including a "statutory obligation to serve the interests of all members without hostility or discrimination." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

Plaintiffs allege that the Union "blackballed" Mr. Ricci by failing to refer him for jobs for which he believes he was qualified and other actions with respect to available jobs among Union employer signatories. The applicable statute of limitations in a suit brought by an individual against the union for a breach of duty of fair representation is governed by § 10(b)[3] of the NLRA, which provides for a six-month statute of limitations. *DelCostello*, 462 U.S. at 155. Again, even providing Plaintiffs with the latest possible date, their Complaint was not filed within the statute of limitations. Accordingly, Plaintiffs' Complaint is time-barred.

Because the Court has dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

---

[3] "Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided*, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge." 29 U.S.C. § 160(b).

## V. Conclusion

Accordingly, Go Daddy's motion to dismiss is GRANTED and Teamsters Union Local 456's motion to dismiss is GRANTED. The Clerk of the Court is respectfully requested to terminate Docket No. 37, Docket No. 44, and close this case.

Dated: April 28, 2014
White Plains, New York

SO ORDERED:

_____ 4/28/14
NELSON S. ROMÁN
United States District Judge